UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DOUG'S WORD CLOCKS.COM PTY LTD,                    :

                                                   :

                                   Plaintiff,      :          Docket No. 16 cv 7322

                                                   :

              -against-                            :

                                                   :

PRINCESS INTERNATIONAL, Inc., et. al.,             :

                                                   :

                                   Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
SANCTIONS PURSUANT TO RULE 37**

# **TABLE OF CONTENTS**

Table of Authorities ........................................................................... iii

Preliminary Statement.........................................................................1

Facts ......................................................................................................2

Argument...............................................................................................2

Point I
Sanctions Under Rule 37(b) Are Warranted Against Friedman And Princess .........2

     A.    General Considerations Under Rule 37 ....................................2

     B.    Sanctions Available Under Rule 37..........................................17

     C.    The Court Should Strike the Answers
          of Princess and Friedman.........................................................24

     D.    An Order Should Be Issued Establishing Certain Facts ...........10

          1.  The Court Should Deem All Clocks Sold to Gifts & Gadgets
              as Sold on Amazon by Friedman at the Highest Advertised
              Price, $79.95, Because Friedman Refuses to Disclose His
              Sales ……………..................................................10

          2.  The Court Should Deem It A Fact That All Clocks Sold By
              Defendants Were Model # 1 Clocks Because Defendants
              Refuse to Disclose How Many Model # 1 Clocks
              They Sold ………..................................................11

          3.  The Court Should Deem It A Fact That The Missing 615
              Clocks Paid For By Princess, But Never Reported, Have
              Each Been Sold By Princess At $79.95....................12

POINT II
Costs And Fees Are Awarded ………......................................................13

Conclusion  ………………………......................................................14

## **Table of Authorities**

**Cases**                                                                 **Page**

*Bambu Sales, Inc. v. Ozak Trading Inc.,* 58 F.3d 849 (2d Cir.1995) .......................4

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir. 1979).................................................................................................9

*DLC Mgmt. Corp. v. Hyde Park*, 163 F.3d 124 (2d Cir. 1998)................................4

*Gordon v. Kaleida Health*, 2013 WL 2250431 (W.D.N.Y. 2013) ..........................13

*Luft v. Crown Publishers, Inc.,* 906 F.2d 862 (2d Cir.1990)....................................4

*Man Wei Shiu v. New Peking Taste Inc.*, 2013 WL 2351370 (E.D.N.Y. 2013)......13

*Natl. Hockey League v Metro. Hockey Club, Inc.,* 427 US 639 (1976) ...................3

*PSG Poker, LLC v. DeRosa-Grund*, 2008 WL 190055, (S.D.N.Y. 2008) ..............11

*R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 23 (S.D.N.Y.2010) .......................................9

*Rammal v. Timberland Co.*, 1995 WL 559394 (S.D.N.Y. 1995) ..............................9

*Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 106 (2d Cir. 2002) ..........................................................................................2, 3, 4, 10

*S. New England Tel. Co. v. Global NAPs Inc.,* 624 F.3d 123 (2d Cir. 2010)........3, 9

*Shcherbakovskiy v. Seitz,* 450 Fed. App'x 87 (2d Cir. 2011)....................................4

*Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248 (S.D.N.Y.2012) ..................9

*Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197 (1958)  ...................................................................................4

*Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67 (2d Cir.1988) .................4

*Valentini v. Citigroup*, 2013 WL 4407065 (S.D.N.Y. 2013)(JMF) .........................3

**<u>Statutes</u>**

17 U.S.C. § 504(b) ...................................................................................10, 11, 12, 13

F.R.C.P. 37(b) ...................................................................................2, 3, 4, 10, 13

F.R.C.P. 16(f) ...................................................................................................13

**Preliminary Statement**

The defendants must be sanctioned for their refusal to comply with discovery orders. The Court has provided multiple opportunities for all defendants to comply with discovery orders, however on each occasion the defendants refused to comply.  But more disquieting, is defendant Princess International, Inc.'s and its CEO, defendant, Joseph Friedman's fraud on the court in expressly denying that clocks were sold through Amazon.com.  It was only after plaintiff subpoenaed Amazon.com, Inc. that these parties were forced to disclose 3,432 sales of infringing clocks shipped through Amazon.com that they had previously been concealing.

As a result of repeated denials in verified interrogatory responses, and statements made by their counsel in open court, plaintiff has expended time, money and attention to obtain sales documents that should have been provided when they were first requested in December 2016. The bad faith is palpable given that plaintiff's counsel repeatedly told defendants' counsel that he could see the clock being sold on Amazon.com.  Moreover, plaintiff testified at his deposition that he purchased the clock from Princess on Amazon.com and provided the website link on Amazon.com showing Princess selling the clock.  There is no excuse for failing to identify thousands of sales of infringing clocks amounting to nearly half of all reported sales. Given the defendants' flouting of respect for the Court, its orders, and the discovery process severe sanctions must be imposed.

Sanctions are absolutely necessary in this matter because the defendants continue to withhold critical documents that prejudice plaintiff's ability to establish its damages.  Moreover, defendants Princess and Friedman (the CEO of Princess), through their counsel, continue to play

1

"hide the ball" concerning whether it is Princess, Freidman, or both that are selling thousands of clocks on Amazon.com under the name "Gifts & Gadgets."

**Facts**

The facts relevant to this motion are set forth in the Declaration of Brian Levenson.

**ARGUMENT**

**POINT I**

**SANCTIONS UNDER RULE 37(b) ARE WARRANTED**

**AGAINST FRIEDMAN AND PRINCESS**

Defendants Princess International, Inc. ("Princess"), Joseph Friedman ("Friedman"), Camelot SI, LLC ("Camelot"), and Hammacher, Schlemmer & Co., Inc., have all flouted their discovery obligations and this Court's orders for the past three months.  Under Rule 37, the Court has broad discretion in fashioning sanctions.

**A.      General Considerations Under Rule 37**

Under FRCP Rule 37(b), when a party fails to comply with a discovery order, the court may issue "further just orders" which may include "dismissing the action or proceeding in whole or in part," and "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action." FRCP Rule 37(b). Courts have "broad discretion in fashioning an appropriate sanction" and sanctions "may be imposed upon a party that has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence." *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 106 (2d Cir. 2002).

2

Sanctions under Rule 37(b) are "intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault." *S. New England Tel. Co. v. Global NAPs Inc.,* 624 F.3d 123, 148-49 (2d Cir. 2010); see also *Natl. Hockey League v Metro. Hockey Club, Inc.,* 427 US 639, 643, 96 S Ct 2778, 2781 (1976)(noting that Rule 37 sanctions may serve both to "penalize those whose conduct may be deemed to warrant" them and to "deter [those] who might be tempted to such conduct in the absence of such a deterrent"). Thus, "[e]ven when a party finally (albeit belatedly) complies with discovery orders after sanctions are imposed, these purposes may still justify the sanctions." *S. New England Tel. Co.,* 624 F.3d at 149 ("[I]f parties are allowed to flout their obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules.").

The range of sanctions available to a court under Rule 37(b) includes—but is not limited to —"orders deeming certain facts established; permitting an adverse inference instruction; striking pleadings; prohibiting the 'disobedient' party from making specific claims or introducing certain matters into evidence; dismissing a claim or the entire action or granting a default judgment against the disobedient party; or entering an order of contempt." *Valentini v. Citigroup*, 2013 WL 4407065 at *2 (S.D.N.Y. 2013)(Furman, J.)(citing *Residential Funding Corp., supra*.

In light of the record here, the sanctions under Rule 37(b) discussed below are warranted.

3

### B.        Sanctions Available Under Rule 37

The Second Circuit has repeatedly affirmed its "belief in the importance of appropriate sanctions as a necessary means of dealing with a recusant party." *Update Art, Inc. v. Modiin Publishing, Ltd.,* 843 F.2d 67, 71 (2d Cir.1988). Although the district court has broad discretion in choosing an appropriate sanction, it should reserve the most severe punishments for the "rare" cases in which "they are necessary to achieve the purpose of Rule 37 as a credible deterrent." *Id.*[1]

In general, a drastic sanction is only warranted if the noncompliance has been "willful, or in bad faith, or otherwise culpable." See *Luft v. Crown Publishers, Inc.,* 906 F.2d 862, 865 (2d Cir.1990) (citing *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 212 (1958)). Among the factors the court should consider in selecting an appropriate sanction are the extent and duration of the noncompliance, the culpability of the noncompliant party, the adequacy of notice, the efficacy of lesser sanctions, and the existence of warnings of the consequences of non-compliance. See *Bambu Sales, Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 852 (2d Cir.1995); *Shcherbakovskiy v. Seitz,* 450 Fed. App'x 87, 88 (2d Cir. 2011). These factors, however, are "not exclusive" and "need not each be resolved against the party challenging" the sanctions. *Id.* Moreover, the court is "not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *Id.*

---

[1] In addition to its broad discretion under Federal Rule 37(b), the Court is empowered to impose sanctions for misconduct in discovery under its inherent power to manage its own affairs. *See, e.g., Residential Funding,* 306 F.3d at 107 (citing *DLC Mgmt. Corp. v. Hyde Park,* 163 F.3d 124, 135-36 (2d Cir. 1998)).

4

**C.    The Court Should Strike the Answers of Princess and Friedman**

Applying these principles requires that the Court strike the Answers of Princess and Friedman. Notwithstanding 7 months of litigation, Friedman and Princess have failed to provide relevant discovery.

Friedman has not responded to a single interrogatory or produced a single document in response to discovery demands.  Levenson Decl., ¶ 5. Friedman admits in the Answer that he is "an individual doing business as 'Gifts and Gadgets Online'" and that he resides 1572 61st Street in Brooklyn, and that he is the CEO of Princess. (Docket No. 18, ¶ 9) Levenson Decl., ¶ 5. Princess produced documents confirming 3,432 sales to Gifts & Gadgets online located at the address where Friedman resides. Levenson Decl., ¶ 5, 44, Exh. 25. The Complaint shows printouts of the clocks being sold by Gifts & Gadgets Online.  Levenson Decl., ¶ 33 (Docket No. 1, Exh. 9). Despite this evidence, Friedman has failed to respond to the interrogatories or provide information about the individual sales. Levenson Decl., ¶ 5. Friedman's wholesale failure to provide interrogatory responses and produce relevant documents is particularly egregious given that his attorney has misled the court by stating all the sales documents were provided and that there were no sales on Amazon. Levenson Decl., ¶ 27 ((Exhibit 10, p. 4:24-25).

Princess delayed producing its sales documents to Gifts & Gadgets Online (Friedman) until it was absolutely forced to when plaintiff subpoenaed Amazon.com.  Levenson Decl., ¶¶ 43-44. Princess has never provided any explanation of how it could have overlooked all of the sales, 3,432 sales out of approximately 9,120 total, to its biggest customer, its own CEO, Freidman. Levenson Decl., ¶ 43.

Princess not only failed to produce these sales, Princess appears to have manufactured Document 1100, a sales report, that falsely states it had sold a total of 6,626 clocks, when it fact it had sold 9,062.  Levenson Decl., ¶ 41. At the time Document 1100 was provided to plaintiff's counsel, Princess had never disclosed any of its thousands of sales to its own CEO, Friedman. Levenson Decl., ¶ 41. It is implausible that Princess was simply negligent in failing to search for and produce documents confirming 3,432 clock sales to its own CEO, Friedman was verifying interrogatory responses throughout March of 2017. For example, Princess had sold  180 clocks to Friedman in February 2017 alone, and over 1,000 clocks to Gifts & Gadgets since the time the Complaint was filed in September 2016.  Levenson Decl., ¶ 43, Exh. 30.

Further, it appears that Princess is withholding documents concerning additional purchases and sales of clocks from its factory in China.  Levenson Decl., ¶ 6. Princess has produced purchase orders stating it purchased 9,120 clocks at a cost of $170,484.  Levenson Decl., ¶ 51. However, the bank records of payments for these purchases total $182,052.50. Princess has not accounted for the $11,569.50 difference, the equivalent of 615 clocks, which sell for $79.95 at retail.  Levenson Decl., ¶ 52. Plaintiff is missing discovery on these 615 clock that Princess has not accounted for with a retail value of approximately $49,250. Levenson Decl., ¶ 53.

It is clear that Princess and Friedman were actively concealing these sales and continued to do so in multiple verified responses to interrogatories and document requests, in which Princess flatly denied selling on Amazon.com.  Levenson Decl., ¶ 32 (Exhibit 13, p. 4); ¶ 40. The fraud continued through their counsel in open court when defense counsel told the Court

Princess has provided all of its sales documents, even though it had not yet produced its sales to Gifts & Gadgets.  Levenson Decl., ¶ 27.  Princess' sales to Gifts & Gadgets were only disclosed after Amazon.com was subpoenaed and it became clear that Amazon would reveal these sales. Levenson Decl., ¶¶ 42-44.  Regardless of Friedman's failure to respond to any discovery, it is inexplicable why Princess did not disclose the 3,432 clock sales to Gifts & Gadgets. Levenson Decl., ¶ 43. Princess claimed to have produced all sales documents for all defendants and non-parties alike, but for some reason only sales to its biggest customer, Gifts & Gadgets were concealed. Levenson Decl., ¶ 43.

Through misleading representations under oath,[2]  delays, creation of manufactured sales summaries, and concealment of sales records, Princess and Friedman attempted to hide from the Court, from plaintiff, and ultimately from the fact finder, the existence 3,432 sales of the clocks. Levenson Decl., ¶ 43. Friedman continues to refuse to produce sales documents for Gifts & Gadgets even though he is a defendant in the case and admits that he is doing business as Gifts & Gadgets in his Answer.  Levenson Decl., ¶ 5. They refuse to identify how many units of clock model #1 were sold and refuse to produce un-redacted e-mails with the factory in China that changed the software code and clock face. Levenson Decl., ¶¶ 7-8.

The misconduct at issue clearly concerns one of the central issues in this case – defendants' profits from the infringing activity, particularly with respect to Model # 1. Levenson Decl., ¶ 7. Princess and Friedman persisted in defying this Court's numerous orders despite

---

[2] The numerous verifications to interrogatory responses are technically defective in that they do not contain the words "under oath." However, Mr. Sutton represented to the Court that the verifications in fact were sworn under oath.  Levenson Decl., ¶ 36, (Exh. 18 March 16, 2017 Conf. Tr., p. 20:19-20). It would be absurd to credit the defendants for technically not lying under oath when they believed they had.

repeated warnings they would be sanctioned. Levenson Decl., ¶ 28 (Exhibit 10, p. 9:4-22, 13:25-14:5). Princess and Friedman made a strategic decision to disobey this Court's orders, to further their overall goals in this litigation until their scheme unraveled, at first through a passing statement by their attorney in a letter to plaintiff's counsel affirming sales on Amazon.com, and finally, when Amazon.com was subpoenaed. Levenson Decl., ¶ 30 (Exhibit 12, p. 21); ¶¶ 42-44. Despite four court orders:

(i)     Friedman has not produced a *single* sales document or responded to any interrogatory. Levenson Decl., ¶ 5.

(ii)    Princess and Friedman led the Court to believe that they were complying with their obligations and had produced all of their sales documents.  "[Plaintiff] has all the sales that Princess made to its customers.  He has all that." Levenson Decl., ¶ 27.

(iii)   Princess submitted interrogatory responses on March 10, 2017, verified by Friedman, expressly stating "Princess International does not sell to Amazon.com" contradicting defense counsel that stated Princess did. Levenson Decl., ¶¶ 30, 32, 49.

(iv)    Princess submitted interrogatory responses on March 21, 2017, verified by Friedman, expressly stating, "Princess International does not sell to Amazon.com" contradicting defense counsel that stated Princess did. Levenson Decl., ¶¶ 30, 40, 49.

(v)     Princess created document number 1100 with fraudulent sales totals of 6,339 through mid-January 2017 and an additional 267 units through end of March, when the true total exceeded 9,000. Levenson Decl. ¶ 41, Ex. 23; ¶ 43.

Princess and Friedman made the strategic decision to disobey court orders, to lie under oath, to create false documents concerning sales numbers, to have their attorney mislead the Court, for as long they thought they could get away with it.  Levenson Decl., ¶¶ 42-44. The willfulness of Princess' and Friedman's lies about non-existence of sales on Amazon.com is egregious given that:

• The Complaint has an Exhibit with images of Gifts And Gadgets selling the clocks on Amazon.com. <u>Levenson Decl.</u>, ¶ 33 (Docket No. 1, Exh. 9).

• Plaintiff testified on February 8, 2017 he purchased a clock from Princess on Amazon.com at his deposition, and provided the link to defendants confirming this was true. <u>Levenson Decl.</u>, ¶ 33, Exhibit 14 (<u>Jackson Tr.</u>, 178-180)

• Plaintiff's counsel offered the court screenshots of Princess selling the clocks on Amazon.com at the March 16, 2017 conference <u>Levenson Decl.</u>, ¶ 36 (Exhibit 18, p. 4:17 – p. 5:9).

• Counsel for defendants sent a letter to plaintiff's counsel dated March 7, 2017 that stated Princess was selling clocks on Amazon.com, <u>Levenson Decl.</u>, ¶ 30 (Exhibit 12, p. 21).

• Friedman's sales of the clock on Amazon were easily verifiable by going on Amazon.com, the entire time Princess denied that it was selling on Amazon.com. <u>Levenson Decl.</u>, ¶ 36.

Accordingly, given their complete disregard of the Court's Orders and its violation of fundamental discovery obligations, and given that Friedman and Princess have misled the Court and plaintiff to believe they had provided the required document discovery, the Court should strike their answers. *Rammal v. Timberland Co.,* 1995 WL 559394, at *4 (S.D.N.Y. Sept. 20, 1995) (applying *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir. 1979). Plaintiff has and will continue to suffer substantial prejudice in litigating the case without access to Friedman's information. Any sanction short of striking his answer would undoubtedly fail to "deter those who might be tempted to such conduct in the absence of such a deterrent." *S. New England Tel. Co.,* 624 F.3d at 149; see also *Cine*, 602 F.2d at 1065-68 (imposing sanction "tantamount to . . . dismissal" because counsel had defied court orders and "frozen [that] litigation in the discovery phase" for over four years); *Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 254 (S.D.N.Y.2012) ("MA's repeated refusal to turn over

9

relevant documents—in direct violation of three separate Court orders—is enough to establish culpability."); *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 23 (S.D.N.Y.2010) ("In the Second Circuit, negligence is sufficient to establish culpability." (citing *Residential Funding*, 306 F.3d at 108)).

**D.     An Order Should be Issued Establishing Certain Facts**

In addition to striking the Answers of Princess and Friedman, or as an alternative, an order should be issued by this Court establishing certain facts against all defendants including Camelot and Hammacher. Fed. R. Civ. P. 37(b)(2)(A)(i)-(ii).  *Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 253 (S.D.N.Y. 2012) (citing *Residential Fund*ing, 306 F.3d at 107) (making adverse finding based on party's "willful refusal to turn over materials").

**1.     The Court Should Deem All Clocks Sold to Gifts & Gadgets as Sold on Amazon by Friedman at the Highest Advertised Price, $79.95, Because Friedman Refuses to Disclose His Sales**

A central issue in the case is how many clocks were sold by Gifts & Gadgets on Amazon.com because this information is necessary for plaintiff to establish its copyright infringement damages for the clock face design under 17 U.S.C. § 504(b).  Friedman has admitted that he does business as Gifts & Gadgets. Levenson Decl., ¶ 5. Princess disclosed 3,432 sales to Gifts & Gadgets at wholesale ($38). Levenson Decl., ¶ 43 (Exhibit 25). However, Friedman refuses to produce his sales on Amazon.com. Levenson Decl., ¶ 5.  Princess, through defense counsel, admits it receives payments from Amazon for clock sales.  Levenson Decl., ¶ 49. The clocks sold on Amazon plainly state they are sold by Gifts & Gadgets.  Levenson Decl., ¶ 33 (Docket No. 1, Exh. 9); ¶ 36 (Exhibit 18).

Without Gifts & Gadgets sales information, plaintiff will be prejudiced because it will be unable to establish Friedman's gross revenues from sales of the clocks in the calculation of

plaintiff's damages. 17 U.S.C. § 504(b). Since Friedman and Princess (who defense counsel admits has access to the Gifts & Gadgets Amazon account, <u>Levenson Decl.</u>, ¶ 49) refuse to disclose these sales, the Court should deem that each of the 3,432 clocks sold by Princess to Gifts & Gadgets was sold by Friedman on Amazon.com at the highest advertised price, $79.95.

**2.  The Court Should Deem It A Fact That All Clocks Sold by Defendants Were Model #1 Clocks Because Defendants Refuse to Disclose How Many Model # 1 Clocks They Sold**

Another key issue in the case is identifying the subset of all clocks sold that were Model # 1 featuring the infringing software code. All defendants, including Hammacher Schlemmer & Co, Inc., and Camelot SI, LLC, refuse to respond to Interrogatory 8(c) concerning clock models sold. <u>Levenson Decl.</u>, ¶ 7.   Further, Princess has redacted e-mails with the factory in China concerning when changes were made to the software code. <u>Levenson Decl.</u>, ¶ 8. Without this information, plaintiff is prejudiced in its ability to establish defendants' gross revenues in connection with its software infringement claim.  See *PSG Poker, LLC v. DeRosa-Grund*, 2008 WL 190055, at *12 (S.D.N.Y. 2008) (repeated failure to produce relevant documents "or a credible story regarding their whereabouts" interpreted as an intentional and willful act).  Since the defendants' refuse to identify how many clocks with the infringing software were sold, all sales by defendants should be deemed to be of Model # 1 with the infringing software.

Defendants seek to benefit from their refusal to produce discovery concerning the subset of their total sales showing the number of clocks sold containing the infringing software code. Plaintiff cannot establish or verify these defendants' gross revenues from sales, in particular Model # 1 clocks. 17 U.S.C. § 504(b). The only way to prevent defendants' form benefitting from their refusal to respond to interrogatory 8(c) concerning the number of each clock model

11

sold is for the court establish as a fact that all of the clocks sold contained the infringing software.

**3.  The Court Should Deem It A Fact That The Missing 615 Clocks Paid for Princess But Never Reported Have Each Been Sold by Princess At $79.95.**

Similarly, Princess' failure to account for all clocks purchased prevents plaintiff from establishing the full extent of its damages under 17 U.S.C. § 504(b). <u>Levenson Decl.</u>, ¶¶ 6, 51-53. Princess seeks to benefit from its concealment of the additional clocks that it purchased from its factory in China. Plaintiff is prejudiced in its ability to establish its damages if Princess will not produce documents for all clocks purchased, let alone, sold.  Unless each of these clocks is deemed sold by Princess, Princess will in fact from its withholding of documents.

Accordingly, it is respectfully requested that the following facts be established for purposes of this action:

(i)    Each clock Princess sold to Gifts & Gadgets was sold by Friedman at the highest advertised price on Amazon.com, $79.95.

(ii)   All of the clocks sold by each defendant shall be deemed to be "Model # 1" which defendant's counsel advised the Court contained the infringing software.

(iii)  The missing 615 clocks paid for by Princess but never reported should be deemed to have been sold by Princess for $79.95.

At minimum, the foregoing findings would be justified.

**POINT II**

**COSTS AND FEES ARE WARRANTED**

Given defendants' default of the Court's Orders on December 8, 2016, February 2, 2017, March 2, 2017, March 16, 2017 -- which is continuing -- and their disregard of the Court-

Ordered discovery schedule, together with their complete abuse of the discovery process over a sustained period of time, the sanction of costs and attorney's fees is required.

Pursuant to Federal Rule 16(f)(1)-(2) "[i]nstead of or in addition to any other sanction, the court *must order* the party, its attorney, or both to pay the reasonable expenses -- including attorney's fees -- incurred because of any noncompliance with this rule." Fed. R. Civ. P. 16(f)(1)-(2) (emphasis added); *Man Wei Shiu v. New Peking Taste Inc.*, 2013 WL 2351370, at *11 (E.D.N.Y. 2013) (under Rule 16(f), "[a]bsent substantial justification or special circumstances, attorney's fees are *mandatory*" (emphasis added)).

Likewise, Federal Rule 37(b)(2)(C) provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *See also Gordon v. Kaleida Health*, 2013 WL 2250431, at *7 (W.D.N.Y. 2013) ("However, this contention overlooks Fed. R. Civ. P. 37(b)(2)(C) which specifically requires the court award such expenses . . . unless the sanctioned party's failure to comply with the underlying order compelling discovery was substantially justified or an award of such expenses would, under the circumstances, be unjust.").

Because defendants have violated a scheduling or other pretrial order (*see id*. at ¶¶ 11, 16), the Court must impose sanctions under Federal Rules 16(f)(2), and 37(b)(2)(C).

Plaintiff respectfully request an award of all costs and attorney's fees incurred in connection with the discovery process, including all costs and fees in connection with this

13

motion. Plaintiff will be prepared to make a submission setting forth their specific costs and attorney's fees after full briefing of this motion.

## *CONCLUSION*

In view of the foregoing, it is respectfully requested that the Court award the sanction of striking the Answers of Princess and Friedman and in addition, or, in the alternative, the establishment of certain facts against defendants identified herein, together with the award of costs and attorney's fees, together with such other relief that the Court deems just and proper.

Dated: April 7, 2017
New York, New York

Respectfully submitted,

SCHWARTZ, PONTERIO & LEVENSON, PLLC

By:      /s/Brian Levenson
         _____
         Brian S. Levenson
         134 West 29th Street, Suite 1006
         New York, NY 10001
         Telephone: (212) 714-1200
         *Attorneys for Plaintiff*