USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/14/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
DOUG'S WORD CLOCKS.COM PTY LTD., :
:
Plaintiff, : 16-CV-7322 (JMF)
:
-v- : OPINION AND ORDER
:
PRINCESS INTERNATIONAL, INC. et al, :
:
Defendants. :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff Doug's Word Clocks.Com ("Doug's Word"), a manufacturer of electronic clocks that display the time in a word format, brings intellectual property claims against various Defendants, including Princess International, Inc. ("Princess International"), Joseph Friedman, Hammacher, Schlemmer & Co., Inc. ("Hammacher Schlemmer"), and Camelot Venture Group LLC, ("Camelot"), relating to the manufacture and sale of allegedly infringing clocks. Doug's Word now moves, pursuant to Rule 37 of the Federal Rules of Civil Procedure, for sanctions against those Defendants based on a series of alleged discovery violations.[1] For the reasons set forth below, Doug's Word's motion is GRANTED.

**FACTS**

The Case Management Plan and Scheduling Order in this action, entered on December 8, 2016, provided that Defendants would provide Doug's Word with "sales and profits" information by January 20, 2017. (Docket No. 21 ("Case Management Plan") ¶ 12(a)). Additionally, Doug's Word served its first request for production of documents on December 9,

---

[1] Doug's Word's motion appears to be limited to Princess International, Friedman, Hammacher Schlemmer, and Camelot, and does not seek relief with respect to the other Defendants. (Docket No. 45). References to "Defendants" throughout this Opinion are therefore limited to the four Defendants at issue in the motion.

2016, and its first set of interrogatories on December 20, 2016. (Docket No. 46 ("Levenson Decl.") ¶¶ 12, 13). Princess International was the only Defendant to respond, but its responses were far from comprehensive. (*Id.* ¶¶ 14, 15). For example, while Princess International initially stated that a number of documents were "being produced," the company did not actually hand over any responsive documents, including sales agreements or invoices. (*Id.* ¶ 15). Princess International's responses to Doug's Word's interrogatories were similarly incomplete. (*Id.* ¶ 18). Most notably, for example, Interrogatory No. 8(c) asked each Defendant for information about the various clock models that it had sold. (*Id.*). Princess International's response was merely "See documents produced," but it did not actually produce the information or documents requested. (*Id.*). On top of that, Princess International's interrogatory responses — indeed, the interrogatory responses of each Defendant in the case — were not properly verified under oath. *See* Fed. R. Civ. P. 33(b)(3). (Levenson Decl. ¶ 45).

After many futile communications — by both letter and telephone — from Doug's Word's counsel detailing the insufficiencies in Defendants' responses, Doug's Word, on January 30, 2017, filed a letter motion to compel Defendants to respond to its discovery requests. (*Id.* ¶¶ 15-17, 19-21; Docket No. 22 ("Pl.'s Motion to Compel")). The Court scheduled a conference for February 2, 2017, but, on the eve of the conference, the parties entered into a stipulation in which Defendants agreed to provide supplemental interrogatory responses and sales and profits information by February 12, 2017. (Docket Nos. 25, 27, 28). Following Defendants' failure to provide that information, not to mention two additional telephone calls and a letter from counsel, Doug's Word filed a second motion to compel on March 1, 2017. (Docket No. 29). The Court scheduled a conference for the following day, at which Defendants' counsel assured the Court that "[Doug's Word] has all the sales that Princess [International] made to its customers. He has

all that." (Levenson Decl., Ex. 10 ("Mar. 2, 2017 Conf. Tr."), at 4). The Court nevertheless provided Defendants until March 10, 2017, to provide the missing discovery and warned Defendants that they would face sanctions if they did not comply by that deadline. (*See* Mar. 2, 2017 Conf. Tr., at 13-14 ("Mr. Sutton, I hope you hear me loud and clear. If you don't produce everything that you need to produce by [March 10, 2017], there will be trouble to pay, by you, by your clients, by both. I hope you hear me.")). Shortly after the conference, Doug's Word's counsel e-mailed defense counsel a detailed letter identifying Defendants' outstanding discovery obligations. (Levenson Decl., Ex. 11).

Remarkably, Defendants failed to respond to all of Doug's Word's outstanding discovery requests by the March 10th deadline. Instead, Defendants served on Doug's Word (but did not file) a document akin to a summary judgment brief that, for the first time, acknowledged that "Princess [International] is the exclusive distributor for the Clocks and sells them at Amazon and Wal-Mart." (Levenson Decl., Exhibit 12 ("Defs.' Mar. 7, 2017 Ltr."), at 21). The same day, Princess International produced two responsive e-mails (concerning changes made to the clock's software code) that appeared to be incomplete as they contained "Re:" or "Fw:" in the subject lines, indicating they were parts of longer chains that were not produced. (*Id.*). (Levenson Decl., Ex. 16 ("Redacted E-mails"), at 1-2). In response, Doug's Word, once again, requested a conference, this time to discuss the imposition of sanctions. (Docket No. 34). Shortly after that request, Defendants Camelot, Hammacher Schlemmer, and Princess International provided additional interrogatory responses, but, once again, Doug's Word's requests were not fully addressed. For example, Princess International responded to Interrogatory No. 8(c) — which, as noted above, requested information about clock models sold — by stating: "See response to Number 7 above." (Levenson Decl., Ex. 13 ("Princess International's First Interrogatory

3

Resp."), at 4). Princess International's response to Interrogatory No. 7, however, was merely a list of witnesses. (*Id.* at 3). Princess International also noted in its response that "Princess [International] does not sell to Amazon" (*id.* at 4), a response that contradicted the company's earlier representations. (Defs.' Mar. 7, 2017 Ltr. 21).

Following another letter from Doug's Word's counsel noting the inadequacy of Defendants' responses, the Court scheduled a conference for March 16, 2017. (Docket Nos. 34, 35). At the conference, the Court directed the parties to confer on the outstanding discovery issues by March 21, 2017, and, if the discovery was not provided thereafter, gave Doug's Word until April 7, 2017, to file a formal motion for sanctions. (Levenson Decl., Ex. 18 ("Mar. 16, 2017 Conf. Tr."), at 19-20). Once again, the Court warned Defendants in no uncertain terms that sanctions would be imposed if they failed to cure their discovery deficiencies. (*Id.* at 19 ("And if you can't provide [sales information about clock models and prices], then we are not going to average the prices. I'm going to make an assumption or make a finding that every single unit was sold at the highest possible price, and I am going to make other inferences and grant other inferences against you.")). Thereafter, Defendants Hammacher Schlemmer and Camelot produced their second set of interrogatory responses, and Princess International provided its third set of responses. (Levenson Decl., Exs. 20-22). Once again, however, none of these responses adequately addressed Doug's Word's request in Interrogatory No. 8(c); additionally, Princess International denied selling to Amazon for the second time. (*Id.*). Princess International also produced a report, Document 1100, titled "Sales Information By Princess International." (Levenson Decl., Ex. 23 ("Document 1100")). The report confirmed that Princess International had failed to disclose hundreds of sales to previously unidentified customers since January 2017,

and noted that Princess International had sold a total of 6,626 clocks (6,339 clocks through mid-January 2017 and an additional 287 after that date). (*Id.*).

Meanwhile, on March 23, 2017, Doug's Word subpoenaed Amazon itself for documents relating to Princess International's clock sales. (Levenson Decl., Ex. 24). On March 28, 2017, no doubt prodded by the subpoena, Princess International produced an additional twelve pages of documents confirming that it had shipped 3,432 clocks to Amazon as sold to "Gifts & Gadgets Online" ("G&G"), for a total of $130,416. (Levenson Decl., Ex. 25 ("Amazon Documents")). Notably, however, the Amazon subpoena returns, which Doug's Word received only after filing the instant motion, make clear that G&G sold an additional 1,135 clocks to Amazon that were unreported by Princess International. (Docket No. 63 ("Amazon Returns"), at 1).[2]

In addition to these unreported clock sales, Princess International and Joseph Friedman, the company's Chief Executive Officer, have made conflicting statements regarding the ownership and status of G&G. For example, in their Answer, Defendants admitted that Friedman is an individual "doing business as 'Gifts & Gadgets Online.'" (Docket No. 18 ("Answer") ¶ 9). Yet, in his declaration, Friedman tells a different story: "Gifts & Gadgets

---

[2] Princess International attributes the discrepancy between sales reflected in the Amazon Documents (3,432) and in the Amazon Returns (4,567) to four things: (1) sales of 300 clocks after the March 2017 production of the Amazon Documents; (2) defective returns; (3) Amazon's double-counting returned clocks; and (4) Amazon's inclusion of 600 model # 3 clocks. (Docket No. 67 ("Princess' May 25, 2017 Ltr."), at 1-2). These explanations are unsatisfactory. First, to the extent that there were additional sales after Princess International produced the Amazon Documents, the company had an obligation to supplement its earlier production. *See, e.g.*, *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 124 (S.D.N.Y. 2007) ("The duty to disclose that arises under Rule 26 does not terminate after the first responsive answer or production, but is a continuing obligation."). Second, Princess International provides no proof — from Amazon or otherwise — for its assertion that Amazon's numbers are inflated due to defective returns and the double-counting of returned clocks. Finally, the Complaint expressly alleges that model #3 clocks are also infringing and Doug's Word specifically requested discovery for sales of all versions of the clocks, including the model # 3 clock. (*See* Docket No. 1 ¶¶ 34, 60-63; Pl.'s Motion to Compel, Ex. 1, at 7).

Online is a company owned by Princess International, *not* Mr. Friedman personally…" (Docket No. 49 ("Friedman Decl.") ¶ 3) (emphasis added)). Tellingly, the sales documents produced by Princess International confirm that the address provided for G&G (and for Princess International) is Friedman's residence. (*Compare* Amazon Documents at 1112, *with* Answer ¶ 9). And on top of all that, it appears that there is no company registered as "Gifts & Gadgets" with the New York State Department of State Division of Corporations. (Levenson Decl. ¶ 48).

Finally, on April 6, 2017, the day before Doug's Word's deadline to file the present motion, Princess International produced bank records for purchase orders between the company and its factory in China totaling $182,052.50. (Levenson Decl. ¶ 52). The initial purchase orders that were produced by Princess International in January, however, totaled only $170,484. (Levenson Decl. ¶ 51). In his Declaration, Friedman attributes the $11,569.50 difference to sales for unrelated products — and claims to be providing the documents to support that contention — but his numbers do not correspond to the missing $11,569.50. (*See* Friedman Decl. ¶ 5 (invoices for unrelated products adding up to $15,612)).[3]

## DISCUSSION

Rule 37 of the Federal Rules of Civil Procedure permits a court to impose a variety of sanctions for discovery-related abuses, and "affords the court 'broad discretion in fashioning an appropriate sanction.'" *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 195 (E.D.N.Y. 2010) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002)). The range of sanctions available to a court includes — but is not limited to — "orders deeming certain facts established; permitting an adverse inference instruction; striking pleadings; prohibiting the 'disobedient' party from making specific claims or introducing certain matters

---

[3] After the present motion was fully briefed, Defendants Princess and Friedman substituted new counsel for the counsel that had represented them throughout discovery, Ezra Sutton. (Docket Nos. 77-78). Mr. Sutton appears to still represent all other Defendants.

into evidence; dismissing a claim or the entire action or granting default judgment against the disobedient party; or entering an order of contempt." *Id.* Where, as here, a party alleges that the opposing party failed to disclose documents it was required to produce, the "moving party bears the burden of showing that its adversary failed timely to disclose information required by Rule 26." *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. at 125. To satisfy this burden, the moving party must demonstrate: "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find it would support that claim or defense." *Id.* (quoting *Residential Funding*, 306 F.3d at 107).

Here, there is no dispute that the "missing evidence" is relevant and would support Doug's Word's claims, as the number and type of the allegedly infringing clocks produced and sold by Defendants is central to this case. (*See, e.g.*, Docket No. 1 ("Compl.") ¶¶ 33, 38, 52). Additionally, Doug's Word has made the other two showings required for sanctions. First, Princess International and Friedman plainly had an obligation to produce the requested materials under their control. The Court-ordered Case Management Plan and Scheduling Order explicitly provided that Defendants would provide Doug's Word with "sales and profits" information by January 20, 2017. (Case Management Plan ¶ 12(a)). Moreover, in its first request for production of documents on December 9, 2016, Doug's Word made specific requests for such materials. (Levenson Decl., Ex. 1). But despite those requests; multiple telephone calls and letters from counsel; conferences with, and admonitions from, the Court; and several Court Orders, Princess International and Friedman failed to produce highly relevant documents relating to the sale of thousands of clocks from Princess International to G&G until March 28, 2017 — and even then

provided incomplete records.  (*See, e.g.*, Levenson Decl. ¶¶ 17, 20, 21, 28, 36, 38, 43; *see also* Amazon Returns 1).  Even more significantly, Princess International and Friedman have *still* not produced documents concerning G&G's sales *on* Amazon; the documentation they produced is limited to sales from Princess International *to* G&G.  (*Id.* ¶¶ 5, 43, 45).

In response, Defendants make two factual assertions: first, that "documents showing sales on Amazon were produced early during discovery" and, second, that the sales were actually conducted by G&G, not by Princess International or Friedman, and thus not subject to production here.  (Friedman Decl. ¶¶ 2-3; Levenson Decl., Ex. 28).  These two assertions are, of course, in tension (if not conflict) with one another.  But more fundamentally and troublingly, they are demonstrably false.  The first flies in the face of Princess International's repeated denials that it conducted *any* business on Amazon, not to mention the proof obtained through the Amazon Returns that Defendants still have not produced all Amazon sales information.  (*See* Levenson Decl. ¶¶ 32, 40).  And Defendants' efforts to distance themselves from G&G are undermined by, among other things, (1) Princess International's admission that it does, in fact, sell to Amazon through G&G (Levenson Decl. ¶ 30; Amazon Documents 1112); (2) Princess International's admission that it has possession of records relating to G&G sales on Amazon (Levenson Decl. ¶ 49); (3) Princess International's admission that payments flow "from Amazon to Princess [International]" for word clocks, among other products (*id.*, Ex. 29, at 1); (4) Princess International's admission that it pays G&G's tax bill (Docket No. 53 ("Defs.' Sur-Reply") ¶ 3); (5) the fact that Princess International, G&G, and Friedman all share an address (Answer ¶ 9; Amazon Documents 1112); and, last but certainly not least, (6) Defendants' admission in their Answer — to which they are bound, *see, e.g.*, *Gibbs ex rel. Gibbs v. Cigna Corp.*, 440 F.3d 571, 578 (2d Cir. 2006) — that Friedman does business as G&G.  (Answer ¶ 9).

In any event, Defendants' failings do not stop there. First and most glaring, Doug's Word represents, without dispute, that Friedman has failed to produce a single document or to respond to a single interrogatory, whether in his individual capacity or through G&G. (Levenson Decl. ¶ 5). Second, none of the four Defendants has adequately responded to Interrogatory No. 8(c), which relates to the number of clocks Defendants sold containing each software model. (*Id.* ¶ 7). Notably, Defendants do not argue otherwise, but insist that they produced an e-mail, titled Document No. 1380, showing that only 432 model #1 clocks were produced. (Friedman Decl. ¶ 4). But that e-mail apparently refers to only one of seven shipments and, thus, is not proof with respect to the total number of clocks involved. (*See* Mar. 16, 2017 Conf. Tr. 12 (explaining that the first of seven shipments included model #1 clocks)). And in any event, production of the e-mail does not satisfy Defendants' obligation to respond to Doug's Word's interrogatories through sworn and signed responses. *See* Fed. R. Civ. P. 33(b)(1), (3), (5). Defendants' failure to respond in the proper manner is particularly bewildering given that the Court explicitly warned Defendants about the need to respond in accordance with the Rules. (*See* Mar. 16, 2017 Conf. Tr. 18 ("This is not a casual exercise of litigation. You don't just get to say, 'There are only 432 clocks, I told you that, and that's the end of the matter.' There are formal ways of providing information in the form of interrogatories, in the form of document requests, and in the form of documents.")).

Third, Doug's Word has established that Princess International failed to produce complete versions of e-mails with the company's factory in China. (*See* Redacted E-mails 1-2). Princess International asserts that it produced the two e-mails as they were received (*see* Friedman Decl. ¶ 2), but, notably, the company has failed to produce electronic versions of the e-mails, as Doug's Word requested. (Docket No. 50 ("Levenson Reply Decl.") ¶ 10). And finally,

9

Princess International has failed to account for why its payments to its manufacturer for clocks exceeded the manufacturer's invoices by $11,569.50. (*Compare* (Levenson Decl. ¶ 52) (noting that the bank records for purchase orders between Princess International and its factory in China totaled $182,052.50), *with* (Levenson Decl. ¶ 51) (noting that the purchase orders that produced by Princess International totaled only $170,484)). Princess International claims that the $11,569.50 was for unrelated products identified as "cry baby toys" and "gift card mazes." (Friedman Decl. ¶ 5). But that claim is belied by the invoices it produced for those unrelated products, which add up to $15,612 rather than $11,569.50. Accordingly, Princess International has not actually accounted for its payment of $11,569.50 to its manufacturer.

The final requirement for sanctions — that the non-complying party had a culpable state of mind — is also easily satisfied. At a minimum, all four Defendants were plainly negligent in failing to produce responsive documents or to respond to interrogatories in a timely, thorough, and proper manner. *See Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 254 (S.D.N.Y. 2012) (finding that the defendant's "repeated refusal to turn over relevant documents — in direct violation of three separate Court orders — [was] enough to establish culpability."); *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 23 (S.D.N.Y. 2010) ("In the Second Circuit, negligence is sufficient to establish culpability." (citing *Residential Funding*, 306 F.3d at 108)). But Princess International and Friedman's conduct went beyond that and can only be described as willful. Those two Defendants not only flouted their discovery obligations despite multiple admonitions and Orders from the Court, but — making matters worse — they also repeatedly made material misrepresentations to Doug's Word and the Court. For example, weeks before sending over new documents reflecting Princess International's sales on Amazon through G&G, Defendants' counsel told the Court that "[Doug's Word's counsel] has all the sales that Princess

[International] made to its customers. He has all that." (Mar. 2, 2017 Conf. Tr. 4; *see also* Mar. 16, 2017 Conf. Tr. 7 ("With regard to Princess [International] . . . I served [Doug's Word's counsel] all of the sales documents.")). Similarly, on April 21, 2017, Friedman inaccurately claimed that "[a]ll sales of word clocks sold on Amazon have been provided." (Friedman Decl. ¶ 2; *but see* Amazon Returns 1). And Princess International repeatedly claimed — until it was forced to admit otherwise — that it did not sell clocks on Amazon. (*Compare* Princess International's First Interrogatory Resp. 4 ("Princess [International] does not sell to Amazon.com."), *with* Defs.' Mar. 7, 2017 Ltr. 21 ("Princess [International] is the exclusive distributor for the Clocks and sells them at Amazon and Wal-Mart.")). Princess International's and Friedman's "repeated failure to either produce relevant documents *or* a credible story regarding their whereabouts — despite the admonitions of this Court and repeated requests from the plaintiff[] — can only be interpreted as an intentional and willful act." *PSG Poker, LLC v. DeRosa-Grund*, No. 06 CIV. 1104 (DLC), 2008 WL 190055, at *12 (S.D.N.Y. Jan. 22, 2008).

Most egregiously perhaps, Princess International provided Doug's Word with Document 1100, which reported that the company had sold 6,626 clocks, when the true total was at least 9,062 clocks. (*See* Document 1100; Levenson Decl. ¶¶ 41, 43; Levenson Decl., Ex. 30 ("Princess International's Total Sales Spreadsheet"), at 3). Conspicuously, Defendants fail to dispute, or even mention, Doug's Word's contention that the figures in Document 1100 were false insofar as they did not account for the clocks reflected in the Amazon Documents. (Docket No. 47 ("Pl.'s Mem.") at 6 ("Princess [International] not only failed to produce these sales, Princess [International] appears to have manufactured Document 1100. . . ."); Docket No. 51 ("Pl.'s Reply") 6) ("Princess [International] does not dispute that the sales data provided . . . in [D]ocument 1100 was false . . . .")). And this was no insignificant omission: G&G appears to be

Princess International's largest "customer," accounting for over one third of the total clocks sold in the company's three-year existence. (*See* Levenson Decl. ¶ 43; *see also* Princess International's Total Sales Spreadsheet). It strains credulity to believe that Friedman and Princess International mistakenly or inadvertently failed to account for all of the sales that were made to (or through G&G). Accordingly, the Court finds that Friedman and Princess International acted with willful intent in shirking their discovery obligations.

Thus, the Court concludes that sanctions are warranted. In determining what sanctions to impose, the Court must consider "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302-03 (2d Cir. 2009) (internal quotation marks omitted). The Court must also consider the extent to which the prevailing party has been prejudiced by the defaulting party's noncompliance, *see Anthropologie, Inc. v. Forever 21, Inc.*, No. 07 Civ. 7873 (RJS) (MHD), 2009 WL 690126, at *3 (S.D.N.Y. Mar. 13, 2009), and must ensure that any sanction imposed is "just and commensurate with the failure to comply," *Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358, 370 (S.D.N.Y. 2009). Extreme sanctions, such as striking a pleading or entering judgment against the offending party, are "pungent, rarely used, and conclusive. A district judge should employ [them] only when he is sure of the impotence of lesser sanctions." *Ocello v. White Marine, Inc.*, 347 F. App'x 639, 641 (2d Cir. 2009) (internal quotation marks omitted).

Considering those factors here, the Court concludes that the answers of Princess International and Friedman should be stricken.[4] First, as noted above, those two Defendants

---

[4] That said, Friedman remains bound by his judicial admission in the Answer that he does business as G&G. It would be a perverse result indeed if the sanctions imposed on Friedman

demonstrated a blatant and willful disregard for the discovery process and the Orders of the Court, including by apparently manufacturing a report that purposefully omitted over 3,000 clock sales made through Amazon. Second, any lesser sanction would be inadequate. From the outset of discovery, both parties have refused to respond in any meaningful way to Doug's Word's requests or to heed the Court's admonitions and deadlines. Friedman, for his part, has not produced a single document or answered a single interrogatory — despite multiple opportunities and deadlines to do so. Third, the period of non-compliance spanned discovery and appears to continue to this day, as Princess International and Friedman have yet to produce information or documents regarding G&G's sales on Amazon. *See Agiwal*, 469 F. App'x at 70 (affirming dismissal of an action as a sanction for willful noncompliance with discovery orders for more than three months). Fourth, Princess International and Friedman were put on notice by the Court — on more than one occasion — that their refusal to respond to Doug's Word's requests would expose them to sanctions. (*See, e.g.*, Mar. 2, 2017 Conf. Tr. 13-14 ("Mr. Sutton, I hope you hear me loud and clear. If you don't produce everything that you need to produce by [March 10, 2017], there will be trouble to pay, by you, by your clients, by both. I hope you hear me."); *see also* Mar. 16, 2017 Conf. Tr. 18 ("And if you have not provided [the missing documents], I am going to entertain a motion for sanctions from [Doug's Word]. I think based on what I've heard, it's amply justified at this point."). And finally, Doug's Word has demonstrated that it has been — and continues to be — prejudiced by Princess International's and Friedman's non-compliance. Among other things, without accurate sales information, Doug's Word will be unable to establish Defendants' gross revenues from sales of the allegedly infringing clocks.

---

actually benefitted him.

By contrast, the Court concludes that such a harsh sanction is unwarranted with respect to Hammacher Schlemmer and Camelot, whose sole alleged violation is their failure to adequately respond to Interrogatory No. 8(c), which called for information regarding the model type of all clocks produced or sold. Instead, the Court concludes that the appropriately tailored sanction with respect to those two Defendants is to deem all word clocks sold model #1 clocks, as those are indisputably the most infringing of the clocks at issue. *A fortiori*, that sanction applies also to Princess International and Friedman, who also failed to adequately answer Interrogatory No. 8(c). In addition, the Court concludes that certain other facts should be deemed established with respect to Princess International and Friedman — namely, that all clocks sold by Princess International to G&G were sold on Amazon for at least $85.67 and that the unaccounted-for $11,569.50 payment by Princess International to its manufacturer was payment for 615 clocks that were sold by Princess International for $85.67 each. The former is appropriate because Princess International and Friedman still have not produced G&G's sales information, even though Princess International admits that it receives payments from Amazon for clock sales. (*See* Levenson Decl. ¶ 49).[5] The latter is necessary given Princess International's failure (or inability) to account for the missing $11,569.50 in merchandise. (*See* Levenson Decl. ¶ 6).

Finally, the four Defendants shall reimburse Doug's Word for its reasonable expenses, including attorney's fees, caused by Defendants' failures and violations. *See* Fed. R. Civ. P. 16(f)(1)-(2) ("On motion or on its own, the court may issue any just orders . . . if a party or its attorney . . .fails to obey a scheduling or other pretrial order . . . [and] the court *must* order the

---

[5]  $85.67 is the average price for the clocks sold by G&G on Amazon. (Amazon Returns 2). Princess International argues that the Court should factor in discounted prices, Amazon's commission, and other costs before arriving at an average price. (Princess' May 25, 2017 Ltr. 1). But by withholding vital information regarding the relevant transactions for months — and by continuing to withhold information regarding G&G's transactions on Amazon — Princess International and Friedman have forfeited their rights to introduce evidence on that score.

party, its attorney, or both to pay the reasonable expenses — including attorney's fees — incurred because of any noncompliance with this rule, . . ." (emphasis added)); Fed. R. Civ. P. 37(b)(2)(C) ("[T]he court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [obey an order to provide or permit discovery]." (emphasis added)). To be clear, Doug's Word is not entitled to reimbursement of "*all* costs and attorney's fees incurred in connection with the discovery process," as it seems to suggest. (Pl.'s Mem. 13 (emphasis added)). After all, there are several Defendants who are not alleged to have committed discovery violations, and Doug's Word would have incurred expenses in connection with discovery even in the absence of Defendants' violations. Instead, reimbursement is limited to those expenses "caused by" Defendants' failures, Fed. R. Civ. P. 37(b)(2)(C), including the expenses associated with Doug's Word's letter motions, discovery-related conferences, and the present motion. Additionally, the Court concludes that liability for the expenses should be apportioned among the offending Defendants in proportion to their culpability. Accordingly, Princess International and Friedman shall each be jointly and severally liable for reimbursement of all eligible expenses, while Hammacher Schlemmer and Camelot shall each be jointly and severally liable for reimbursement of five percent of all eligible expenses.

## CONCLUSION

In light of the foregoing, Doug's Word's motion for sanctions is GRANTED. Specifically, exercising its broad discretion to craft appropriate sanctions, the Court strikes the Answers of both Princess International and Friedman and deems the following facts to be established: (1) that all clocks sold by Princess International to G&G were sold on Amazon for $85.67; (2) that the unaccounted-for $11,569.50 payment by Princess International to its

15

manufacturer was payment for 615 clocks that were sold by Princess International for $85.67 each; and (3) that all word clocks produced or sold by all four Defendants were model # 1 clocks. Additionally, Defendants shall reimburse Doug's Word for its "reasonable expenses, including attorney's fees," caused by their failures to comply with the Court's Orders and their discovery obligations. Counsel shall confer in an effort to reach agreement on what constitutes "reasonable expenses" caused by Defendants' failures. Barring agreement, Doug's Word shall submit a fee application, supported by contemporaneous billing records, no later than **thirty days** from this Opinion and Order; Defendants shall file any opposition within **two weeks** of any application. Absent leave of Court, Doug's Word may not file a reply.

The suspension of litigation pending resolution of this motion (*see* Docket No. 41) is hereby lifted. Given that Defendants Princess International Friedman have new counsel, the Court hereby ORDERS the parties to appear for a conference on **October 4, 2017**, at **4:15 p.m.**, in Courtroom 1105 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York. By **Thursday** the week prior to the conference, the parties shall file on ECF a joint letter, not to exceed three (3) pages, regarding the status of the case and any matters that should be discussed at the confernce. The letter should include any information that the parties believe may assist the Court in advancing the case to settlement or trial.

The Clerk of Court is directed to terminate Docket No. 45.

SO ORDERED.

Dated: September 14, 2017
      New York, New York

JESSE M. FURMAN
United States District Judge